# SEPTEMBER TERM, 1909.

CASE 60.—PROSECUTION BY COMMONWEALTH AGAINST NELSE BOGGS FOR VIOLATING LOCAL OPTION LAW.—September 22, 1909.

## Boggs v. Commonwealth

Appeal from Lawrence Circuit Court.

J. B. HANNAH, Circuit Judge.

Defendant convicted and appeals.—Reversed.

1. Intoxicating Liquors—Local Option Law—Sale—Persons to Whom Sold.—Under Ky. St. 1909, Sec. 2558a, Acts 1904, p. 106, c. 76, as amended by Act March 21, 1906 (Acts 1906, p. 363, c. 87), and Act March 19, 1908 (Acts 1908, p. 55, c. 15), making it unlawful to sell intoxicants in any town, etc., where such sale has been prohibited under the local option law, except by manufacturers selling their own liquor at the place of manufacture to a wholesale or licensed retail dealer, a manufacturer could not sell liquor to one not a wholesale or retail dealer.

2. Statutes—Enactment—Time Effective.—Act approved March 19, 1908 (Acts 1909, p. 55. c. 15), relating to the violation of the local option law, would not apply to a transaction made in March of that year; Const. Sec. 55, providing that no act shall become a law until 90 days after adjournment unless an emergency clause is attached.

3. Intoxicating Liquors—Local Option Law—Sale by Distiller.—Acts 1904, p. 160, c. 76 as amended by Act March 21, 1906 (Acts 1906, p. 363, c. 87), making it unlawful to sell intoxicants in any town, etc., where such sale has been prohibited under the local option law, except by manufacturers selling their own liquor at the place of manufacture, was enacted to permit manufacturers to dispose of their own product at the place of manufacture, and the fact that a distillery was not in operation at the time a sale was made at the distillery did not make the sale in violation of the statute.

M. S. BURNS for appellant.

The defendant. who was a distiller, has shown himself to be scrupulously anxious to obey the laws governing the sale of whiskey, and although in a case of life and death, such as this one was represented to be, he would not sell only by wholesale, of his own manufacture, delivered at one time and not to be drunk on the premises. and to a man whom he knew had a retail license and was a retail liquor dealer when he last knew him.

JAS. BREATHITT, Attorney General, and TOM. B. McGREGOR, Assistant Attorney General, for Commonwealth.

It seems to us that the indictment sufficiently set up the fact of the former quashing by the court upon demurrer and the re-submission to the grand jury. We do not think the defendant could have successfully pleaded his limitations under the indict-ment in its present form.

### AUTHORITIES CITED.

Ky. Statutes, Sections 2557, 2588, 2558a, 2540; Griffin v. Commonwealth, 23 R. 2205; Row v. Commonwealth, 24 R. 947; Farris v. Commonwealth, 31 R. 847; Souther's v. Commonwealth, 12 R. 636; Commonwealth v. G. W. Taylor Co., 19 R. 1334.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

Nelse Boggs was indicted in the Lawrence Circuit Court for violating the local option law in selling five gallons of whisky to T. W. Hill. On the trial of the case the proof for the commonwealth was as follows: "I purchased from the defendant, Nelse Boggs, five gallons of whisky, and paid him for it. He gave me the whisky in a five-gallon keg all at the same time, and I took it all away from his distillery at that time, and did not drink any of it on the premises. I think this sale occurred in the early spring of 1908. My wife was very low with typhoid fever, and the doctors told me I must get some whisky, as her life probably depended up it. I first tried to get a half of a gallon from Mr. Boggs, the defendant, and told him that I wanted it for my wife, but he would not let me have

any amount less than five gallons, and said he had no right to sell any less, but could sell me five gallons or more as a distiller of his own manufacture. I was not a retail dealer at that time.''

The defendant was introduced on his own behalf, and testified as follows: ''I know Mr. Hill, the witness for the Commonwealth, and sold him the whisky he speaks of. I sold him a five-gallon keg of whisky of my own manufacture. The whisky was in the original package, and was all delivered to witness at the same time, and he took it all away, and did not drink any of it on the premises. Mr. Hill first asked for a half gallon, but I refused to let him have any amount less than five gallons, and he agreed to buy the five-gallon keg, and I sold it to him. I had formerly run and operated a distillery, but about 1907 I shut down my distillery, and did not manufacture any more whisky thereafter. This whisky I sold him was my own manufacture, but I was not then manufacturing whisky. I had shut down my distillery some time before this sale, and at the time of the sale was not manufacturing any whisky at all. I could not say whether Mr. Hill, the witness, was a retail liquor dealer when I sold him the whisky or not, but he had been and had a retail license.''

On this evidence the court instructed the jury in substance that, if they believed from the evidence beyond a reasonable doubt that Boggs had sold whisky to Hill, they should find him guilty. He also gave them the following instruction: ''Although the jury should believe from the evidence beyond a reasonable doubt as defined in instruction No. 1, yet if they further believe from the evidence that the defendant at the time he sold said liquors, if he did so, was a manufacturer of liquors, and said liquor was of his

own make and was in good faith sold by him in the usual course of trade by the wholesale in quantities of not less than five gallons delivered at one time, and not to be drunk on the premises, and not with a view to its immediate division into smaller quantities, they will find the defendant not guilty.'' The jury found the defendant guilty, fixing his fine at $100, and he appeals.

The indictment was first found on May 8, 1908, and, a demurrer having been sustained to it, a new indictment was found. The sale relied on therefore was made before May 8, 1908, and, as Mr. Hill says, in March of that year. The prosecution is based on section 2558a, Ky. St. 1909. That section as originally adopted read as follows:

''It shall be unlawful to sell by wholesale any spirituous, vinous, malt or other intoxicating liquors, regardless of the name by which it is called (except manufacturers selling liquors of their own make) in any county, district, precinct, town or city where the sale of such liquor has been prohibited by special act of the General Assembly, or by vote of the people under the local option law. Any person violating this act shall be deemed guilty of violating the local option law, and shall be subject to trial and punishment according to the provisions of the same and its amendments.'' See Acts 1904, p. 160, c. 76.

By the act of March 21, 1906, the words ''at the place of manufacture'' were added after the words ''of their own make.'' See Acts 1906, p. 363, c. 87, by the act of March 19, 1908, the words ''to a wholesale dealer or a licensed retail dealer'' were added after the words ''at the place of manufacture,'' so that the section in its present form reads as follows: ''It shall be unlawful to sell by wholesale any spiritous, vinous,

malt or other intoxicating liquors, regardless of the name by which it is called, except manufacturers selling liquors of their own make, at the place of manufacture to a wholesale dealer or a licensed retail dealer in any county, district, precinct, town or city where the sale of such liquors has been prohibited by special act of the General Assembly or by vote of the people under the local option act. Any person violating this act shall be deemed guilty of violating the local option law and shall be subject to a trial and punishment according to the provisions of same and its amendments.'' See Acts 1908, p. 56, c. 15.

As Hill was not a wholesale or retail dealer, Boggs had no right to sell the whisky to him under the act of 1908; but that act contained no emergency clause, and did not take effect until 90 days after the adjournment of the Legislature. See Constitution, Sec. 55. The act was approved March 19, 1908, and was therefore not in force when the transaction in contest took place. The court properly so held. The instructions given the jury were based on the act of March 21, 1906. The court in substance, told the jury that the defendant was guilty, unless at the time he made the sale he was a manufacturer of whisky. This instruction under the proof that he had shut down his distillery some time before, and was not then manufacturing whisky, induced the verdict. The evidence was conclusive that the whisky was of his own make, and was in good faith sold by him by the wholesale in a quantity not less than five gallons, delivered at one time, and not to be drunk on the premises. There was nothing indicating an evasion of the local option law. The whisky was sold at the distillery where it was made. The fact that the distillery was not then in operation is wholly immaterial. The purpose of

the statute was to give manufacturers the right to dispose of their product at the place of manufacture. To limit the right to the time the distillery is in operation would be to add to the terms of the statute and to defeat the purpose for which it was enacted; for few, if any, distilleries run throughout the year, and many plants are shut down when the product on hand unsold is as large in amount as the operator deems he can safely risk. Under the evidence the court should have instructed the jury peremptorily to find the defendant not guilty.

Judgment reversed, and cause remanded for further proceedings consistent herewith.